EXHIBIT

5

ALL-STATE LEGAL

GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF PUBLIC SCHOOLS

OFFICE OF STUDENT HEARINGS

```
- - - - - - - - - - - x
                       :
In the Matter of:      :
                       :
DELONTE WRIGHT         :
                       :
- - - - - - - - - - - x
```

                    Washington, D.C.

                    Wednesday, March 9, 2005

        The above-entitled matter came on for

hearing, pursuant to notice.

BEFORE:

        HERBERT ST. CLAIR, Hearing Officer

APPEARANCES:

    On Behalf of the Student/Parent:

        R. HOWELL, ESQ.


    On Behalf of D.C. Public Schools:

        D. RUSSELL, ESQ.


        [TRANSCRIPT PREPARED FROM A TAPE RECORDING.]



MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

P R O C E E D I N G S

HEARING OFFICER ST. CLAIR:  Good morning.  Today is Wednesday, March 9, 2005.  It is approximately 15 minutes after 9:00 in the morning.

This is a confidential administrative hearing concerning the special education services being provided to Delonte Wright by the District of Columbia Public Schools.

Delonte was born on October 17, 1994--I'm sorry--10/1/94.

This hearing is authorized by Public Law 105-17, the Individuals with Disabilities Education Act Amendments of 1997, Title 34 of the Code of Federal Regulations Part 300, and Title 5 of the District of Columbia Municipal Regulations.

This hearing is conducted under the auspices of the District of Columbia Public Schools Hearing Act, referred to as DCPS.

This hearing is confidential and will be closed to the public, unless you, Ms. Wright, explicitly state that it should be an open hearing, a public hearing.

This hearing is being recorded, and either party may request a copy of the recording or a transcript, by making a written request for both or either to the Student Hearing Officer, DCPS.

My name is Herbert St. Clair.  I am the Hearing Officer.  I am going to ask everyone here to please state his or her name.  Let's begin with the attorney advisor.

MS. WHITMAN-RUSSELL:  Donna Whitman-Russell, DCPS Attorney Advisor.

MR. HOWELL:  Roy Carlton Howell, attorney for the student, Delonte Wright, and his mother, Ms. Patricia Wright.

MS. WRIGHT:  Patricia Wright.

STUDENT WRIGHT:  Delonte Wright.

HEARING OFFICER ST. CLAIR:  Now, I have a disclosure from the parties.  Well, I have one from the District of Columbia Public Schools, dated March 2 and March 3.  And from you, Mr. Howell, yours is dated the 20th of February, 2005.

MR. HOWELL:  I believe I submitted it in February.

HEARING OFFICER ST. CLAIR:  All right.  Is there an amendment?

MR. HOWELL:  I filed a supplemental one in response, actually.

HEARING OFFICER ST. CLAIR:  Is that the notice to attend hearing as a witness?

MR. HOWELL:  Yes.  I think that's it, Judge. Let me check.  Also, there is petitioner's additional disclosure of evidence and witnesses, and that was filed timely on the 2nd of March, pursuant to the rules.

HEARING OFFICER ST. CLAIR:  I have a motion for judgment on the pleadings.

MR. HOWELL:  I will just simply--

HEARING OFFICER ST. CLAIR:  Summary judgment.

MR. HOWELL:  Yes.

HEARING OFFICER ST. CLAIR:  And then what we have--I just call it a summary determination.

MR. HOWELL:  Yes, Judge.

HEARING OFFICER ST. CLAIR:  You can call me Mr. St. Clair.

MR. HOWELL:  Thank you, Mr. St. Clair.

HEARING OFFICER ST. CLAIR:  I'm not a judicial officer.

MR. HOWELL:  Okay.

HEARING OFFICER ST. CLAIR:  All right.  I have the notice to attend hearing as a witness, which I think is a notice to compel.  You want Ms. Allen to be here.

MR. HOWELL:  Yes, that is correct.

HEARING OFFICER ST. CLAIR:  Then I have-- where is the--I have your disclosure dated February 20.  Now, you said there was an additional--

MR. HOWELL:  Yes.

HEARING OFFICER ST. CLAIR:  --addendum.

MR. HOWELL:  Yes.  As an additional--I filed it in response to the disclosure that was filed by the government, and that was filed in a timely fashion, the same day.

HEARING OFFICER ST. CLAIR:  Okay.

MR. HOWELL:  Which was the deadline date.

MS. WHITMAN-RUSSELL:  I don't know if I have whatever that is.

MR. HOWELL:  I would like to also point out that I have complied with Section 34 CFR 300.509(a)(3), being timely, and that the government has filed disclosures after that date.  I didn't have sufficient time to research and to respond or to even meet with my client, and, thus, anything that comes in, Mr. St. Clair, after that date, should not be allowed.

HEARING OFFICER ST. CLAIR:  Anything after what date?

MR. HOWELL:  In other words, anything that violates 34 CFR Section 300.509(a)(3), which says--

HEARING OFFICER ST. CLAIR:  I understand. What is the date?

MR. HOWELL:  Okay.  I believe the deadline date, if you could look at mine, should have been on--

MS. WHITMAN-RUSSELL:  March 2.  I filed some things on March 3, but things that were--the disclosures on March the 3rd were letters of invitation.

If you look at the letters of invitation, they went out as late as March the 2nd, and I didn't receive them until March the 3rd.

But I have a preliminary motion that may take care of it.

HEARING OFFICER ST. CLAIR:  Go ahead.

MS. WHITMAN-RUSSELL:  If you look at the one that--

HEARING OFFICER ST. CLAIR:  Just a minute. Did you finish, Mr. Howell?

MR. HOWELL:  My position, Judge, is that--

HEARING OFFICER ST. CLAIR:  Mr. St. Clair.

MR. HOWELL:  I'm sorry, Mr. St. Clair.  And that is, we should abide by the rules relative to time and I should be given documents in a timely fashion.

HEARING OFFICER ST. CLAIR:  So you're saying I should strike the disclosure date of March 3.

MR. HOWELL:  Anything that comes in in violation of the rules.  Yes.

HEARING OFFICER ST. CLAIR:  And you're saying that the cutoff date is March 2.

MR. HOWELL:  That is correct.

HEARING OFFICER ST. CLAIR:  Okay.  Ms.
Russell?

MS. WHITMAN-RUSSELL:  If you notice, DCPS-
05, which is a letter of invitation, which is what
was amended to include--the amendment.

HEARING OFFICER ST. CLAIR:  The one he wants
me to not look at.

MS. WHITMAN-RUSSELL:  Exactly.

HEARING OFFICER ST. CLAIR:  All right.
Before I look at it, what do you have to say about
his saying it is not timely disclosed?

MS. WHITMAN-RUSSELL:  That the reason it
came on March 3 is because it was not sent until
March the 2nd, and that wasn't his first time
receiving it.  I sent it as part of the disclosure on
March the 2nd.  He--

HEARING OFFICER ST. CLAIR:  Sent what as
part of the disclosure on March 2?

MS. WHITMAN-RUSSELL:  The letter of
invitation, DCPS-05.  That is the amended disclosure.

HEARING OFFICER ST. CLAIR:  Now, you're saying it's in the March 2.

MS. WHITMAN-RUSSELL:  No.  March 3.  I sent it on March the 3rd, the second disclosure.

HEARING OFFICER ST. CLAIR:  Oh, I see what you're saying.  You're saying that--

MS. WHITMAN-RUSSELL:  Oh, I see what you're saying, too.  It was sent by the school.  Let me answer your question.  It was sent by the school on March the 2nd.

HEARING OFFICER ST. CLAIR:  To?

MS. WHITMAN-RUSSELL:  Mr. Howell and the parent.  That's on the March 3 disclosure.  It's not going to be on the March 2 disclosure.

HEARING OFFICER ST. CLAIR:  Okay.  Did you get that, Mr. Howell?  Did the school fax it to you?

MR. HOWELL:  Well, Judge, I received these documents from Ms. Russell to be a part of this hearing.

HEARING OFFICER ST. CLAIR:  No, no.  That wasn't what I asked you.

MR. HOWELL:  I'm sorry.

HEARING OFFICER ST. CLAIR:  What I asked you was this letter of invitation that DCPS has marked as five and Ms. Russell says was sent to your office by the school, did you get that?

MR. HOWELL:  To the best of my recollection, I received a certified letter approximately maybe three days before this hearing.

HEARING OFFICER ST. CLAIR:  Okay.  All right.  Now--

MS. WHITMAN-RUSSELL:  And to confirm that he did receive it, what I have amended to include today is DCPS, I think I marked it as 08, which is his response to the letter of invitation.

MR. HOWELL:  It is a settlement negotiation, which is inadmissible in a hearing.  Evidence which has been filed after--

HEARING OFFICER ST. CLAIR:  I understand.  I understand.

MS. WHITMAN-RUSSELL:  And I need to clear something up.

HEARING OFFICER ST. CLAIR:  Wait a minute.

MR. HOWELL:  Well, let's clear this up, if we may.

HEARING OFFICER ST. CLAIR:  Wait, wait, wait, wait, wait, wait, wait.  I want everyone to pause when the Hearing Officer speaks.  I want everyone to pause.

Now, you are right about the settlement negotiations, but the only thing I'm concerned about is the date.

MS. WHITMAN-RUSSELL:  Right.

HEARING OFFICER ST. CLAIR:  The date.  Now--

MS. WHITMAN-RUSSELL:  If I may, Mr. St. Clair.

HEARING OFFICER ST. CLAIR:  Yes.

MS. WHITMAN-RUSSELL:  I entered into no settlement.

HEARING OFFICER ST. CLAIR:  No.  He didn't say that.  What he said was it was settlement negotiations.

MS. WHITMAN-RUSSELL:  Right.  But who did he--he wasn't settling in--

HEARING OFFICER ST. CLAIR:  Just a minute.

MR. HOWELL:  Mr. St. Clair, can I allow--
would you please finish or continue what you're
saying?

MS. WHITMAN-RUSSELL:  I need to finish here.

HEARING OFFICER ST. CLAIR:  Yes.  Please,
counsel, please.

MS. WHITMAN-RUSSELL:  But I need to put--

HEARING OFFICER ST. CLAIR:  All right.  Let
me see--let me see if I--let me get--

MS. WHITMAN-RUSSELL:  There have been no
settlement negotiations.

HEARING OFFICER ST. CLAIR:  I understand
you.  I heard you.  I heard you.

MS. WHITMAN-RUSSELL:  Oh, okay.

HEARING OFFICER ST. CLAIR:  All Mr. Howell
is doing is saying he sent perhaps an offer, period.
He is saying that that was an attempt on his part to
enter into negotiations.  You're saying you didn't
respond to it.

MS. WHITMAN-RUSSELL:  No.  I'm not saying I
didn't respond to it.  That's not what I'm saying.

I'm saying there have been no settlement negotiations whatever.

            HEARING OFFICER ST. CLAIR:  All right.
Okay.  But you're not denying that he sent something to you that was an offer.

            MS. WHITMAN-RUSSELL:  He sent it to Ms.--he sent it to the school and the school doesn't have authority to enter into a settlement.

            MR. HOWELL:  And a copy was sent to Ms. Russell, as well.

            HEARING OFFICER ST. CLAIR:  All right.  Just a minute.  Just a minute.

            MS. WHITMAN-RUSSELL:  And it was in response--

            HEARING OFFICER ST. CLAIR:  Just a minute.
What I am concerned about--what I am concerned about is the letter of invitation, DCPS-5, and whether or not you received it.

            Now, is there something that you have, just the date, not entering--I don't want to hear any terms.

            MS. WHITMAN-RUSSELL:  Right.  Right.

HEARING OFFICER ST. CLAIR:  But just that mentions the letter being received by Mr. Howell.

MS. WHITMAN-RUSSELL:  And whether--

HEARING OFFICER ST. CLAIR:  The letter of invitation.  That's all I want to know.

MS. WHITMAN-RUSSELL:  It was on the--because it was sent certified mail.  Do you want a fax confirmation?

HEARING OFFICER ST. CLAIR:  Well, let me just say this.  Do you have the certified mail receipt?

MS. WHITMAN-RUSSELL:  It was just received, I wouldn't--

MR. HOWELL:  I do.  I signed it.

MS. WHITMAN-RUSSELL:  Okay.  But his question was to me.  And if he just signed for it, my response to you is it would be with the school and not me, and, no, I haven't gotten a copy of it back.

HEARING OFFICER ST. CLAIR:  Okay.  All right.  Before I go any further, now, you said you had a preliminary matter and--

MS. WHITMAN-RUSSELL:  Right.  I do have a preliminary matter.

HEARING OFFICER ST. CLAIR:  And what is that preliminary matter?

MS. WHITMAN-RUSSELL:  The preliminary matter, actually, is a motion to dismiss this entire matter, and this entire matter and others one, too, because of a conflict of interest.

If you go back to DCPS' September 2 disclosure.

HEARING OFFICER ST. CLAIR:  September 2?

MS. WHITMAN-RUSSELL:  Excuse me.  March 2. I stand corrected, Mr. St. Clair.

HEARING OFFICER ST. CLAIR:  Okay.  All right.

MS. WHITMAN-RUSSELL:  March 2, you will see DCPS-01 is a--

HEARING OFFICER ST. CLAIR:  Now, this is timely, right?

MR. HOWELL:  Yes.  It came in on the second.

HEARING OFFICER ST. CLAIR:  It's 01?

MS. WHITMAN-RUSSELL: Yes. It's not marked. I'm sorry. It's the certificate of services rendered by substitute teachers. You will notice that the names on both of the lines are Roy Howell, and it includes his social security number.

If you go on to--and there were--

HEARING OFFICER ST. CLAIR: All right. I understand what you're getting at. Are you suggesting that he has taught the student?

MS. WHITMAN-RUSSELL: He was a substitute teacher for this--well, in the school.

MR. HOWELL: Mr. St. Clair.

HEARING OFFICER ST. CLAIR: Just a minute. Just a minute. Let me finish.

MR. HOWELL: Thank you very much.

HEARING OFFICER ST. CLAIR: I'm going to hear you.

MR. HOWELL: Okay.

HEARING OFFICER ST. CLAIR: I'm not going to close the record until you tell me you have nothing else to say.

MR. HOWELL: Okay.

HEARING OFFICER ST. CLAIR:  All right.  You are saying that Mr. Howell has taught Delonte?

MS. WHITMAN-RUSSELL:  Right.  He has taught in the school.

HEARING OFFICER ST. CLAIR:  No, no, no, no.  Has he taught Delonte?

MS. WHITMAN-RUSSELL:  Yes.  It is my understanding that you will hear the witness testimony that he was one of Delonte's teachers.

MR. HOWELL:  Mr. St. Clair, may Delonte make a statement?

HEARING OFFICER ST. CLAIR:  No.  No, he can't.

MS. WHITMAN-RUSSELL:  If you go to DCPS-02, which is marked, you will see the classroom roster.

HEARING OFFICER ST. CLAIR:  I see, down at the bottom.

MS. WHITMAN-RUSSELL:  Exactly.  I tried to, out of fairness to the students, I tried to--

HEARING OFFICER ST. CLAIR:  I understand.  I understand.

MS. WHITMAN-RUSSELL:  Okay.  Blacking out
the other students.  And then if you go to DCPS-03,
which yours may not be marked, that's--

HEARING OFFICER ST. CLAIR:  Is this it?

MS. WHITMAN-RUSSELL:  That's the classroom--
yes, sir.  That's the school attendance.  I mean, the
school directory of the teachers at the school, and
then DCPS-04 is correspondence to Ms. Allen.

MR. HOWELL:  Will the Administrative Officer
be so very kind as to suasponte simply ask Delonte
Wright one question?

HEARING OFFICER ST. CLAIR:  Well, let me ask
you this.

MR. HOWELL:  On the record, and, that is,
have I--

HEARING OFFICER ST. CLAIR:  Sir.  Sir.  Just
a minute, sir.

MR. HOWELL:  Yes, Judge.

HEARING OFFICER ST. CLAIR:  You were a
substitute teacher at the school.

MR. HOWELL:  In response, Mr. St. Clair, I
have been a substitute teacher in Prince George's

County and the District of Columbia for 27 years.    I
do it essentially almost pro bono to help out within
the indigent poor communities.

Never in my entire career, and the few times
that I have done it, perhaps one, two, three, or four
times a year, has it ever been an issue.    Never has
there been a conflict.

I have before you two licenses.    These
licenses are bona fide.    There is nothing illegal
about it.

HEARING OFFICER ST. CLAIR:    When you say--
okay.

MR. HOWELL:    As a matter of fact, I will say
on the record that I have never taught Delonte
Wright.

HEARING OFFICER ST. CLAIR:    Just talk to me,
Mr. Howell.

MR. HOWELL:    Yes.    Delonte would testify to
that.    Ms. Wright can tell you that.

So, therefore, these exhibits here are
irrelevant, immaterial, and insignificant, and a
waste of time.

We are here concerned about the IDEA rights of this little boy, Delonte Wright.  That is the issue.

Now, this is a red herring in regard to a complaint that I have filed with--I have filed with opposition counsel.  What happened is this, to initiate all of this.

Ms. Allen contacted my client without me knowing it to begin settlement of the case.

HEARING OFFICER ST. CLAIR:  Well, let me-- I'm really not concerned about it.

MR. HOWELL:  Sure.

HEARING OFFICER ST. CLAIR:  What I am concerned about, Mr. Howell, is your being a substitute teacher for DCPS and at the school in question, and the school having documents saying that you taught the student.

MR. HOWELL:  I did not.

HEARING OFFICER ST. CLAIR:  So you're saying these documents--are you saying that that is the case?

MS. WHITMAN-RUSSELL:  Yes.  And I need to
clear--

MR. HOWELL:  Can Delonte testify?

HEARING OFFICER ST. CLAIR:  Just a minute.
Tell you what, Mr. Howell.

MS. WHITMAN-RUSSELL:  I need to clear one
matter up.

MR. HOWELL:  I'd like to hear the Hearing
Officer, please.

HEARING OFFICER ST. CLAIR:  Please.  I want
counsel just to speak to the Hearing Officer.

MS. WHITMAN-RUSSELL:  And I was speaking to
the Hearing Officer.

HEARING OFFICER ST. CLAIR:  I have the issue
in front of me, Mr. Howell, as to whether or not I
wanted to hear your client.  How old is he?

MS. WRIGHT:  Delonte is ten.

HEARING OFFICER ST. CLAIR:  Yes.  I don't
know if I'm willing to hear him talk about whether or
not you have taught him.  I don't know if I want to
hear that from him.

MS. WRIGHT:  But could I say that?

HEARING OFFICER ST. CLAIR:    Please, Ms. Wright.    Let me just say, I know it may appear as if we are having a meeting, but we are not having a meeting.    What we are having is a hearing here and only people who are officers of the court can speak at this stage.

Now, later on, if I decide that there is an issue and to take evidence, Mr. Howell will call you, I will administer the oath to you, and then you can give testimony and you can answer questions, but you cannot make a statement.    Only the attorneys can do that.

What I'm thinking at this point--all right. Fine.    Let's hold this up.

MS. WHITMAN-RUSSELL:    Because I can help.

MR. HOWELL:    I would like to hear the Hearing Officer, please.

HEARING OFFICER ST. CLAIR:    Mr. Howell.

MR. HOWELL:    Yes.    I'm waiting, Judge.

HEARING OFFICER ST. CLAIR:    Please, don't do that.    I wanted to hear what Ms. Russell has to say.

MS. WHITMAN-RUSSELL:  I can help you out.
D.C. Code and Rules of Professional Conduct require
that if there is a possible conflict of interest,
wherein an attorney is representing a client that
stems from prior employment, and, in this instance,
there is no question that this was a student at a
school wherein he was a substitute teacher.

They don't limit it to just those students
that were taught in his class.  In this instance, he
was in the office.  He had access to all student
records.

MR. HOWELL:  That's not true.

HEARING OFFICER ST. CLAIR:  Mr. Howell.

MR. HOWELL:  I vociferously object.

HEARING OFFICER ST. CLAIR:  Mr. Howell, I'm
going to ask you to let her finish.

MR. HOWELL:  Okay.  Yes.

HEARING OFFICER ST. CLAIR:  And then you can
talk.

MR. HOWELL:  All right.

HEARING OFFICER ST. CLAIR:  Go ahead.

MS. WHITMAN-RUSSELL:  The problem is he was in the school.  He had access to the entire student file.  And what the rules specifically require, and this is where I may help you out, what the rules specifically require--

HEARING OFFICER ST. CLAIR:  What rules?

MR. HOWELL:  What rule?  I'm sorry, Judge.

HEARING OFFICER ST. CLAIR:  Mr. Howell, I'm going to ask you not to do that again.

MR. HOWELL:  I apologize.

HEARING OFFICER ST. CLAIR:  Do not say anything to her again.  Don't do that.  I'm going to listen to you, but do not speak to the other attorney.

MS. WHITMAN-RUSSELL:  And I am speaking to you, Mr. St. Clair.

HEARING OFFICER ST. CLAIR:  Yes.

MS. WHITMAN-RUSSELL:  What D.C. Professional Code of Conduct specifically requires is that if there may be a conflict with regards to a former or prior employee, that you receive permission from the prior employer.

HEARING OFFICER ST. CLAIR:  Employer.

MS. WHITMAN-RUSSELL:  Exactly.  And that you also, in this instance, give notice to all parties. And DCPS has--let me give you an example.

It's not unusual for DCPS--I don't want to say it's not unusual.  There are instances where we have interns or where we have other people in the legal profession that may have worked for us; for example, an example is our summer interns.

If they turn around and they work in a clinic wherein they will be doing, as Mr. Howell, and representing the parents or somebody, they write letters to the general counsel requesting permission, discussing which case, such that everybody is on notice of the representation.

In this instance, he has pulled out documentation that is not part of the file showing that he is a substitute teacher for DCPS.  We have received no correspondence or we have not been put on notice--

HEARING OFFICER ST. CLAIR:  What rule are you referring to, Ms. Russell?

MS. WHITMAN-RUSSELL:  D.C. Code of Conduct,
D.C. Professional Code of Conduct, Rules 1.6 and 1.7.

HEARING OFFICER ST. CLAIR:  1.6 and 1.7.
Those are the Rules of Professional Conduct.

MS. WHITMAN-RUSSELL:  D.C., yes, Code of
Professional Conduct.

HEARING OFFICER ST. CLAIR:  All right.
Mister--

MS. WHITMAN-RUSSELL:  And in this instance--

HEARING OFFICER ST. CLAIR:  Just a minute.
I'm going to let her finish.  Go ahead.

MS. WHITMAN-RUSSELL:  In this instance, had
we simply been placed on--

HEARING OFFICER ST. CLAIR:  Can you pull
that microphone a little closer?  Put it where you
pen is, because you have a tendency to roll back.
There you go.  Go ahead.

MS. WHITMAN-RUSSELL:  In this instance, had
we simply been placed on notice--

HEARING OFFICER ST. CLAIR:  I think I
understand.  You're just saying you weren't notified.

MS. WHITMAN-RUSSELL: Not only were we not notified, but we didn't receive the courtesy, and what we normally do when there is as possible--is we look into it, such that if there is a conflict, we can respond.

HEARING OFFICER ST. CLAIR: All right.

MS. WHITMAN-RUSSELL: That never occurred in this.

HEARING OFFICER ST. CLAIR: All right. I understand. I think I understand. Mr. Howell?

MR. HOWELL: Judge, first and foremost, I would like to say, categorically, on the record, that at no time did I have access to any records in any central location.

HEARING OFFICER ST. CLAIR: Can you speak to the rule? Can you speak to the rule?

MR. HOWELL: Yes. Relative to the rule, Your Honor, there is no conflict of the ethical rules. This is--

HEARING OFFICER ST. CLAIR: Did you send a notice?

MR. HOWELL:  My position, Judge, is that this is the first time that I have been given that this is going to be raised as an issue, that there is no violation of the rule.

I would like to have an opportunity to file a memorandum of law and reply to that, so that I can address the issues competently, analytically, and be able to respond to it in a competent fashion.

HEARING OFFICER ST. CLAIR:  All right.

MR. HOWELL:  It is unfair, Judge, to, at the 11th hour--

HEARING OFFICER ST. CLAIR:  All right. Fine.  I understand.

MR. HOWELL:  --without receiving any notice whatsoever.

HEARING OFFICER ST. CLAIR:  Okay.  I understand.  I think you ought to have a chance to respond.

MR. HOWELL:  Let me file a memorandum of law.

HEARING OFFICER ST. CLAIR:  What are we going to do now?

MR. HOWELL:  I think, Judge, the best thing to do at this point is to litigate the IDEA interest of the minor.

HEARING OFFICER ST. CLAIR:  Let me just say this.  You are filing under Child Find.

MR. HOWELL:  That is correct.

HEARING OFFICER ST. CLAIR:  Is the child being--is there a request for evaluation on the table?

MR. HOWELL:  That is correct.

HEARING OFFICER ST. CLAIR:  When was that filed?

MR. HOWELL:  We basically filed our Child Find and we--

HEARING OFFICER ST. CLAIR:  No, no, no.  A request for evaluation.  This is independent from Child Find.  You send the school a letter telling them I want the child evaluated for special education services.  Have you done that?

MR. HOWELL:  Okay.  No, we haven't, and may I continue?  What we have done, if I could have my petition, Judge.  It's right there.

HEARING OFFICER ST. CLAIR:  Right here.

MR. HOWELL:  Thank you very much.

MS. WHITMAN-RUSSELL:  And, Mr. St. Clair?

MR. HOWELL:  Please.

HEARING OFFICER ST. CLAIR:  Let him finish. I'm going to hear you.  I'm going to hear you.

MS. WHITMAN-RUSSELL:  But there is a problem with--

MR. HOWELL:  I'd like to have a chance--

HEARING OFFICER ST. CLAIR:  Go ahead and finish.  I let you finish.  Let him finish.

MR. HOWELL:  Indulgence.  I would like to get the rule.

[Pause.]

HEARING OFFICER ST. CLAIR:  Are you going to quote 125?

MR. HOWELL:  Yes.  That is correct.

HEARING OFFICER ST. CLAIR:  I'm familiar with it.

MR. HOWELL:  Basically, my position, Your Honor, is that 300.125 essentially says that the burden is upon the District, and if you look at my

motion that I filed, we have a paper trail that has been going on for about four or five years.

HEARING OFFICER ST. CLAIR:  Mr. Howell, I have serious questions about a conflict of interest here.  I want to be frank with you.

MR. HOWELL:  I realize that, and I--

HEARING OFFICER ST. CLAIR:  And I am not disposed at this point to go forward on the merits without resolving this conflict.

MR. HOWELL:  If you would be so kind, you said you were going to give me an opportunity to reply to that in the form of a memorandum of law.

HEARING OFFICER ST. CLAIR:  I am.  That's right.  And what I am thinking about at this point is, before we go forward, giving you a chance, both parties, to brief this conflict of interest.

What I want to do is to make sure the system is moving for Delonte.

MR. HOWELL:  That's right.

HEARING OFFICER ST. CLAIR:  That's what I was getting at when I asked you if you had a request

for mediation hearing.  You don't.  I mean, a request for evaluation for special education services.

What you are doing is just relying on Child Find.

MR. HOWELL:  That is correct.

HEARING OFFICER ST. CLAIR:  All right. Fine.  I want to get this child--the evaluation for this child started.  Can you--I'm going to continue this matter and get the briefs.

MR. HOWELL:  Right.

HEARING OFFICER ST. CLAIR:  But, in the meantime, I want the evaluation of Delonte to go forward.

MS. WHITMAN-RUSSELL:  And if I may.

HEARING OFFICER ST. CLAIR:  Just a minute. I want to hear Mr. Howell, first, and then I'm going to--

MS. WHITMAN-RUSSELL:  Because they've already started.

HEARING OFFICER ST. CLAIR:  Just a minute. Just a minute.  Go ahead, Mr. Howell.

MR. HOWELL:  Yes, Mr. St. Clair.  I did receive a certified mail offer a few days ago relative to a meeting.

HEARING OFFICER ST. CLAIR:  Okay.

MR. HOWELL:  And it was my intention to accept one of the dates and to reply with a letter to--

HEARING OFFICER ST. CLAIR:  I'll tell you what we can do, Mr. Howell.  We can go forward on the merits if you waive your claim to attorney's fees. We can go right forward and if you waive your claim to attorney's fees, we can go right forward on the merits.

Otherwise, I will give you a chance to resolve this conflict interest, and then we'll go on the merits, because the conflict, as I see it, is only for attorney's fees.

MS. WHITMAN-RUSSELL:  You are correct.

HEARING OFFICER ST. CLAIR:  Do you want to think about it?  I don't want to--we can do it however you want.  Do you want to think about it?

MR. HOWELL: Basically, the memorandum of law, I have nothing to lose but the attorney's fees. So I might as well just roll the dice and just let you decide on the attorney's fees, and can we go forward on the merits.

HEARING OFFICER ST. CLAIR: No, no, no. I'll tell you. No. You're going to have to waive them. If I have to decide, we are going to postpone, get the memorandums in, and then I'm going to make sure, while doing a continuation, that the evaluation of Delonte is on track and Ms. Wright--we can do it either way you want.

Do you want to talk with your client, first? Let me declare--you understand what I'm saying.

MR. HOWELL: I understand. I need a moment to think.

HEARING OFFICER ST. CLAIR: Fine. I'm going to give you a chance to talk with your client. Maybe you want to talk with your client, but I want to make sure you understand what I'm offering.

I'm saying this.

MR. HOWELL:  Basically, my client gets the remedy, but I lose the attorney's fees.

HEARING OFFICER ST. CLAIR:  That if you waive attorney's fees, I mean, the conflict is no good, but if you want to insist on attorney's fees, then I going to have to decide this conflict thing, and I want that brief.

I'm going to be perfectly honest with you. I'm not comfortable enough dealing with that right now.  But what I don't want to do is to go to finding on the merits and then decide there is a conflict of interest.  I don't want to do that.  That's what I don't want to do.

MR. HOWELL:  Okay.  And, basically, she is arguing that Rule 1.6?

HEARING OFFICER ST. CLAIR:  And seven.

MR. HOWELL:  You said 1.6 and 1.7.

HEARING OFFICER ST. CLAIR:  Yes.

MR. HOWELL:  And this is of the D.C. Rules of Professional Responsibility .

HEARING OFFICER ST. CLAIR:  Is that correct? Now, I am going to declare a five-minute break.

MR. HOWELL:  I would like to have on the record, insofar as we are talking about the Rules of Professional Responsibility , the fact that, and I would like to have this on the record as a preliminary matter, that there is a rule of the D.C. Rules of Professional Responsibility --

HEARING OFFICER ST. CLAIR:  Just speak to me, Mr. Howell.

MR. HOWELL:  I was looking at my paper--4.2. It's 4.2, and Rule 4.2 prohibits--

HEARING OFFICER ST. CLAIR:  Mr. Howell.

MR. HOWELL:  Rule 4.2 prohibits a licensed D.C. lawyer from using a third party to try and settle a case with a client of opposition.

Let me finish, Judge.  What I am alleging here is that a Ms. Allen, who I asked to be here, contacted my client, unknown to me--

HEARING OFFICER ST. CLAIR:  Let me ask you this.

MR. HOWELL:  Settled the case--tried to settle the case.

HEARING OFFICER ST. CLAIR:  Mr. Howell.

MR. HOWELL: Yes.

HEARING OFFICER ST. CLAIR: Does that rule refer to a bar member or does that refer to just anybody? I could understand if--

MR. HOWELL: It refers to a bar member who uses a third party.

HEARING OFFICER ST. CLAIR: Okay. I'll tell you what. Ms. Allen called your client, right? To me, there is a difference.

MR. HOWELL: On behalf of--my client will testify. Ms. Allen called my client on behalf of Ms. Russell.

HEARING OFFICER ST. CLAIR: Mr. Howell.

MR. HOWELL: And I think that is a violation of Rule 4.2.

HEARING OFFICER ST. CLAIR: Mr. Howell. I'll tell you what.

MR. HOWELL: I think I should be able to address that, too. In other words, Your Honor, what is going on here is that these preliminary matters are here to frustrate the process.

HEARING OFFICER ST. CLAIR:  Well, but normally, you are correct, but this conflict thing is serious and I'm going to declare--do you have everything on the record you want, Mr. Howell, before I declare a recess and let you talk with your client?

MR. HOWELL:  Well, Judge, insofar as I want the best for this little boy, and my client is indigent and I think that the little boy deserves to have a break.

So, consequently, I will forfeit my attorney's fees.  I am here for the benefit of the child.

HEARING OFFICER ST. CLAIR:  Okay.  All right.  Let me tell you what.  Let me just say this.

Now, on Child Find, what I am thinking here is that you are in a best--as I understand it, and you correct me where I'm wrong, generally, a violation of Child Find only entitles the child to compensatory education, because we are talking about something that should have taken place, and we can't turn the clock back.

MR. HOWELL:  You are correct.

HEARING OFFICER ST. CLAIR:  So once the child is found eligible, if the child is found eligible.

MR. HOWELL:  That is correct.

HEARING OFFICER ST. CLAIR:  Then there is-- the parent is in a much better position to establish a Child Find violation.

MR. HOWELL:  Well, also, what Child Find does require is that the District of Columbia is obligated to evaluate the child.

HEARING OFFICER ST. CLAIR:  We're going to get that done.

MR. HOWELL:  Right.  I would like to bring to your attention the particular relevant rule I had here relative to evaluations, which is very important, and that is Rule 300.320, and that is evaluation.

What I want and what is crucial here for Delonte, because he has flunked twice and is about to flunk a third time, and that is, we would like to have a psycho-educational evaluation straightaway.

HEARING OFFICER ST. CLAIR:  Mr. Howell, that is almost routine.  I mean, on precedent, the child is going to be given a psycho-educational and the psycho-educational evaluator gives a preliminary screen for whether or not there should be a clinical, and then the clinical may be directed to why he is fighting or having those types of problems.

But all of that is going to come up.  But let me just say this, Mr. Howell, on this conflict matter.

If you are going to continue to represent him, let's suppose a meeting takes place and you decide that something went wrong in the meeting, we are still going to have this conflict problem unless you step aside and let another attorney take this.

See, the conflict issue, if it exists at all, is going to continue to exist.

MR. HOWELL:  Well, that is one of the reasons why I wanted to file a memorandum of law.

HEARING OFFICER ST. CLAIR:  I'll tell you what.  Here is what you can do.  For this matter, for

this matter here, you are waiving your attorney's fees.

MR. HOWELL:  If the little boy gets--if the case is over.  That's all I want.

HEARING OFFICER ST. CLAIR:  He is going to be evaluated.  No.  Well, if you--

MR. HOWELL:  Unless they don't do the evaluation.

HEARING OFFICER ST. CLAIR:  Then we've got the same problem.

MR. HOWELL:  Right.

HEARING OFFICER ST. CLAIR:  The conflict is still there.  It comes back up again.  So what I'm going to do--I don't want to pass this issue on to another attorney advisor--I mean, another hearing officer.

If you do not step aside in your representation on this, that is, if you foresee the possibility of coming back here representing Ms. Wright, then I think I'm going to have to make a decision on this conflict of interest.

Do you understand what I'm saying?

MR. HOWELL:  Yes.

HEARING OFFICER ST. CLAIR:  All right.  Let me declare a recess.  I know this is a lot that you didn't come in here to think about, and I don't want to--I'm going to give you ten minutes to think about this, because, I mean, this has future ramifications, et cetera.

Is there anything that I did not cover, Ms. Russell, before we get this ten-minute break?

MS. WHITMAN-RUSSELL:  I think you need to be aware that DCPS has been trying to get the mom to the table.

HEARING OFFICER ST. CLAIR:  I understand.

MS. WHITMAN-RUSSELL:  Since January.

HEARING OFFICER ST. CLAIR:  Okay.  Just a minute.  I don't want to get into that.  I just want to--just a minute.  Because I want the meeting agreed to, so that Ms. Wright and the school can sit down and--so I don't think what you're getting ready to say is helpful at this juncture.

MS. WHITMAN-RUSSELL:  Okay.  They are prepared.

HEARING OFFICER ST. CLAIR:  Okay.  I am going to declare a brief recess.

[Recess.]

HEARING OFFICER ST. CLAIR:  We are back on the record.  Mr. Howell, what are we going to do?

MR. HOWELL:  Mr. St. Clair, I have a question.

HEARING OFFICER ST. CLAIR:  Yes, sir.

MR. HOWELL:  That is, insofar as the Hearing Officer is relying on Rules 1.6 and 1.7, is it reasonable to request the Haring Officer to read the rules during the hearing, just for the record?

HEARING OFFICER ST. CLAIR:  I don't have it.

MR. HOWELL:  Insofar as the movant party has cited that rule, pursuant to reason, rules of procedure, in all courts of law and administrative hearings, they have the burden of producing it.

HEARING OFFICER ST. CLAIR:  Let me--where are we going with this, Mr. Howell?

MR. HOWELL:  My position is she cited a rule, but we don't have that rule before us to substantiate what her representations are.

I cite rules and then I cite them, I have them here, I refer to the Hearing Officer, and even when I cite extraneous rules, which the Hearing Officer may not have--

HEARING OFFICER ST. CLAIR:  Turn your microphone on.

MR. HOWELL:  I apologize.  Even when I cite extraneous rules that the Hearing Officer may not have that deal with the D.C. Bar or Administrative Procedure Act, I have the professional responsibility to bring them so that the Hearing Officer can take judicial notice of them.

I have no problem with complying with the rules.  I think, in due deference to the Hearing Officer, if she cites the rule, why not give the Hearing Officer the rule, let him read it, let me read it, and then we'll dispose of it.

HEARING OFFICER ST. CLAIR:  I'll tell you what.  That's what we're going to do.  Are we where we were before we left the record as far as what we are going to do for Delonte?

MR. HOWELL:  Right.  In other words,
relative to Delonte, all I want is for them to meet
and to evaluate the child.

HEARING OFFICER ST. CLAIR:  Here is what I
am going to do.  Ms. Wright, I am going to make sure
Delonte is evaluated.

Now, I am going to preserve to you, Ms.
Wright, any cause you may have for Child Find.  As a
matter of fact, if DCPS finds that Delonte is
eligible for special education services, he is going
to be in a better position to come back and get
compensatory education.

Now, on this issue about the representation,
Mr. Howell's representation of you, I am going to
take this under advisement.  I am going to call for
briefs.

Now, how much time do you want, counsel?
And I think I should do this, because Mr. Howell may
want to come back.  If something happens later on and
he wants to come back, and this time he is probably
going to want to get paid, assuming he can establish
a denial.

But, anyway, how much time do we want to get the briefs in?  I'm going to give you a chance to reply.

MR. HOWELL:  Okay.

HEARING OFFICER ST. CLAIR:  Suggestions, counsel.

MR. HOWELL:  It is my recommendation that we move immediately.  I will work immediately after this hearing and I can file--

HEARING OFFICER ST. CLAIR:  Just a date. Just give me a date, Mr. Howell.

MR. HOWELL:  Okay.

HEARING OFFICER ST. CLAIR:  Today is March 9.

MR. HOWELL:  How about by--

HEARING OFFICER ST. CLAIR:  And I'm sure Ms. Russell has a heavier schedule than you have.

MR. HOWELL:  I have a very heavy schedule. I practice in superior court, United States Supreme Court hearings.

HEARING OFFICER ST. CLAIR:  How much time?

MR. HOWELL:  I'm going to give this
immediate effort.  I can, for the interest of the
Hearing Officer to resolve this, how about I get it
back to you on Friday?

HEARING OFFICER ST. CLAIR:  You mean the
11th?

MR. HOWELL:  Right.  If this will help you.

HEARING OFFICER ST. CLAIR:  No, no.  What I
want to do is make sure the parties have a chance to
brief this and then reply.  I also have another --
here is a question I want addressed.

MR. HOWELL:  I understand.  Sure.

HEARING OFFICER ST. CLAIR:  I want DCPS to
address, if they assume that this gentleman is going
to continue practicing, why don't they just notice by
him that they're not going to hire him as a
substitute teacher anymore, and I want you to
address, Mr. Howell, if this letter--if this letter
does satisfy any requirement as far as conflict is
concerned, are you proposing that this may go in ad
infinitum that you may run across another child in a

school that you substitute and then all you have to
do is send a letter in again?

You understand?  I want those issues
addressed.  Here is what I'm going to do.  I'm going
to call for briefs by the 18th of March and replies
by the 25th of March; replies, if any.  Replies are
not required.

Replies are not required.  If a party does
not submit a brief, it will be taken as admitted.

MS. WHITMAN-RUSSELL:  You said reply by what
date, Mr. St. Clair?

HEARING OFFICER ST. CLAIR:  The 25th of
March.  The briefs are due by the 18th of March.

MS. WHITMAN-RUSSELL:  And we are both going
to initially brief our own issues.

HEARING OFFICER ST. CLAIR:  Yes, on this
conflict.  Just the conflict issue.  And I want you
to be sure and cite the rules and attach it, the
wording of the rules.

MS. WHITMAN-RUSSELL:  I always attach them.

HEARING OFFICER ST. CLAIR:  All right.  And
in the interim, the Hearing Officer understands that

the parties have agreed that an MDT meeting, MDT/SEP,
student evaluation plan, is going to take place.

What that means is--

MS. WHITMAN-RUSSELL:  And I need to clear
up--no--she sent out four letters of invite.

HEARING OFFICER ST. CLAIR:  Just a minute.
I don't want to go through that.

MS. WHITMAN-RUSSELL:  I'm going to set a
date.

MR. HOWELL:  Mr. St. Clair, I would like to
object.  Can you please continue on?

HEARING OFFICER ST. CLAIR:  Yes.

MS. WHITMAN-RUSSELL:  They need to accept a
date.

HEARING OFFICER ST. CLAIR:  I understand
that.  I understand that.  I'm going to go off the
record again so your client and you, Mr. Howell, and
Ms. Russell and the school can agree to a meeting
date.

And I don't want to hear anything about how
many letters were sent and how many days were offered
and--

MR. HOWELL:    Thank you.

HEARING OFFICER ST. CLAIR:    I don't want to hear about that.    What this is going to do, Ms. Wright, the student evaluation plan, you and the school will sit down and they will plan an evaluation of--you know what I'm talking about.    Okay.    Fine.

Are there any other questions before I interrupt the record again or can I just close the hearing now?

MS. WHITMAN-RUSSELL:    You can close the hearing.

MR. HOWELL:    I have a question relative to interpretation in regard to the issue of conflict.

HEARING OFFICER ST. CLAIR:    Yes.

MR. HOWELL:    You said that if this letter does satisfy that any conflict is settled--

HEARING OFFICER ST. CLAIR:    Right.

MR. HOWELL:    --in the future.

HEARING OFFICER ST. CLAIR:    Yes.    What I'm getting at is if the rule just is satisfied with the provision of the letter, does that apply to a situation where you have a series of individual

contracts?  In other words, I'm thinking that that
rule may apply to a situation where a person is a
full-time employee and then terminates the employment
and sends a letter in, or, in your case, you have a
series of employments.

MR. HOWELL:  Right.

HEARING OFFICER ST. CLAIR:  And whether or
not that is going to be acceptable, whether or not
the--whether the employment is ongoing or whether or
not the employment is cut off after each letter.

MR. HOWELL:  Ad hoc.

HEARING OFFICER ST. CLAIR:  That's right.

MR. HOWELL:  Got you.

HEARING OFFICER ST. CLAIR:  Anything
further?

MS. WHITMAN-RUSSELL:  No.  They just need to
understand, because we have had problems, they need
to accept a date.

HEARING OFFICER ST. CLAIR:  Okay.  You're
going to get a date.

Anything further, Mr. Howell?

MR. HOWELL:  One other statement, and, that is, can we have it in the record that they will be obligated to perform the psycho-educational evaluation?  Let me say why.

My fear is that they will simply go and meet and there will be no commitment.

HEARING OFFICER ST. CLAIR:  If they do that, sir, then you can come back for denial, but, I mean, I can't get into what the evaluation is going to be, because I don't know--I'm not professionally qualified.

I'm here to make sure the process is followed, but I'm almost certain that they are going to give him a--I have never heard of a child being evaluated without giving a psycho-educational.

MR. HOWELL:  All right.  So the bottom line is he will be--they will start the process.

HEARING OFFICER ST. CLAIR:  Of course. Anything further, Mr. Howell?

MR. HOWELL:  That's it.

HEARING OFFICER ST. CLAIR:  Anything further, Ms. Russell?

MS. WHITMAN-RUSSELL:  No.

HEARING OFFICER ST. CLAIR:  Thank you,

ladies and gentlemen.

The record is closed.

[Whereupon, the hearing concluded.]

-  -  -