# 16 EHLR 424

Joiner v. District of Columbia

Christopher **JOINER**, et al.
    Plaintiffs
 v.

**THE DISTRICT OF COLUMBIA**, et al.
    Defendants

No. 87-3445

U.S. District Court, District of Columbia

January 17, 1990

- Attorneys' Fees/Generally, Prevailing Party
- Attorneys' Fees/IDEA, Prevailing Party
- Parents and Guardians, In General

### Summary

 The parent of a learning disabled student sought an award of attorneys' fees after a hearing officer ruled that the district's proposed placement was appropriate. The hearing officer initially found that the district had not met the burden of proof as to the appropriateness of the proposed placement and ordered an interim placement as requested by the parent. The hearing officer subsequently determined, however, that the district's placement was appropriate, and the parent sought injunctive relief in federal court to maintain the interim placement. The district and the parent then entered into a settlement agreement to continue the interim placement until the student's graduation, which was to occur in approximately six months. Following the settlement, the parent moved to recover attorneys' fees and related costs.
 *HELD:* for the parent.
 The court rejected the argument that the administrative decision in favor of the district precluded an award to the parent. Moreover, the court held that the parent achieved her primary educational objective for her son in maintaining the interim placement until the student's graduation. While the parent did not receive declaratory or injunctive relief, the court concluded that her claim to fees was not weakened by the district's voluntary agreement to the placement. Thus, the court concluded that the parent met the definition of a "prevailing party" and was entitled to attorneys' fees. Based on its calculation of the prevailing hourly rate and the reasonable number of hours expended, the court awarded $11,712.56 to the parent.

PRATT, District Judge

### MEMORANDUM OPINION

## I. Background

This action arises under the Education of the Handicapped Act, 20 U.S.C. §§ 1400-1485 (1988) ("EHA" or "Act"). Plaintiffs are Christopher Joiner, a learning disabled adolescent, and Heberlean B. Joiner, his custodial parent. Defendants are the District of Columbia ("the District"), which receives funds from the United States Department of Education for use in educating handicapped children in this jurisdiction, and Andrew E. Jenkins, Superintendent of the District's Public Schools ("DCPS").

At the end of the 1986-87 school year, after attending the Accotink Academy ("Accotink") for ten years, Christopher had progressed to the point where he needed a new placement. DCPS, by a Notice of Proposed Change dated June 9, 1987, proposed placing him at the Buchanan Secondary Learning Center ("Buchanan"). Plaintiffs disagreed with the proposed placement and claimed that the Notice did not comply with EHA requirements. After a due process hearing on September 2, 1987, the Hearing Officer found that DCPS had not met its burden of proof as to the appropriateness of Buchanan. She ordered that, during the pendency of EHA proceedings, Christopher be maintained at Accotink or placed at a comparable private school within twenty days. DCPS did not comply. As a result, at a second hearing beginning later that month, the Hearing Officer, as a preliminary matter, required DCPS to place Christopher at the Chelsea School ("Chelsea")--the school proposed by his parents as an appropriate placement--"until DCPS could come up with an appropriate interim placement . . . or until an ultimate decision of appropriateness could be resolved." Admin. Rec., Hearing Officer's Determination of Oct. 28, 1987, at 3.

The Hearing Officer later determined that Buchanan was an appropriate placement, and that DCPS should make that placement available to Christopher beginning in January 1988. It was from this determination that plaintiffs sought relief in our Court. They originally requested declaratory and injunctive relief that would maintain Christopher's placement at Chelsea. However, as a result of the parties' January 13, 1989, agreement to continue further status hearings until the time of Christopher's graduation from Chelsea in June 1989, the only remaining issues are whether and in what amount plaintiffs are entitled to attorneys' fees and related costs.

## II. Attorneys' Fees

In a civil action under the EHA, a "court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents . . . of a handicapped child . . . who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). These fees must "be based on rates prevailing in the community in which the . . . proceeding arose for the kind and quality of services furnished," and "[n]o bonus or multiplier may be used in calculating" the award. *Id.* § 1415(e)(4)(C).

Plaintiffs seek $11,712.56 in attorneys' fees and related costs for 121 hours billed in connection with the two administrative proceedings below and the action in this Court. Defendants object to this requested award on two grounds. First, they claim that plaintiffs are not "prevailing parties" within the meaning of section 1415(e)(4)(B) because plaintiffs did not prevail on the merits and because DCPS is entitled to recoup the tuition it paid on behalf of Christopher for his placement at Chelsea. Second, they claim that the requested award is unreasonable and excessive. We address each of these contentions in turn.

### A. Plaintiffs Are "Prevailing Parties"

Because the parties agreed to a continuance of this case until Christopher's graduation, it was unnecessary for this Court to decide whether Buchanan was an appropriate placement. Accordingly, we never ruled on that issue. Defendants emphasize that plaintiffs did not prevail in the administrative hearings, since the Hearing Officer found that Buchanan was an appropriate placement. Defendants argue that because the Hearing Officer's decision was never overturned, plaintiffs are not "prevailing parties" in this action.

In addition, defendants claim that they never consented to Christopher's continued placement at Chelsea at DCPS' expense. Defendants claim that DCPS mistakenly funded Christopher's placement there from January 1988 through May 1989. *See* Brief of Defendants at 5. Indeed, eight days after plaintiffs filed their

motion for attorneys' fees and costs, DCPS demanded that Christopher's parents repay DCPS $15,715.00, the amount DCPS paid to Chelsea on behalf of Christopher during that period. *See id.*, ex. 2. Defendants argue that because "payments to Chelsea School were made in error[,] . . . there is no causal connection between [plaintiffs'] suit and any benefits" plaintiffs claim were derived therefrom. *Id.* at 10.

Defendants' arguments have no merit. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978), *quoted with approval in Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *see Moore v. District of Columbia*, 674 F. Supp. 901, 904 (D.D.C. 1987) (finding that plaintiffs were "prevailing parties"), *rev'd on other grounds*, 886 F. 2d 335 (D.C. Cir. 1989). Plaintiffs' success meets that definition. While they did not obtain *de jure* declaratory and injunctive relief, plaintiffs achieved through this litigation their paramount objective of maintaining Christopher at Chelsea until he graduated. Defendants, well aware that this was plaintiffs' foremost goal, consented to a continuance that they knew would result in the goal's realization. Thus, the parties reached a *de facto* settlement. Defendants' assertion to the contrary borders on the frivolous.

That plaintiffs' success resulted from defendants' surrender rather than a final adjudication on the merits "does not weaken [plaintiffs'] claim to fees." *Maher v. Gagne*, 448 U.S. 122, 129, 100 S. Ct. 2570, 65 L. Ed. 2d 653 (1980); *see Medford v. District of Columbia*, 691 F. Supp. 1473, 1478-79 (D.D.C. 1988) (DCPS agreed to provide special education services sought by one plaintiff, and to place and fund another plaintiff at school he proposed); *Moore*, 674 F. Supp. at 903-04 (defendants agreed to place and fund plaintiff at school selected by plaintiffs). Achievement of objectives is the benchmark for an award of attorneys' fees in EHA cases. *Medford*, 691 F. Supp. at 1479. In this case, there can be no doubt that plaintiffs have prevailed.

Moreover, we find defendants' contention that Christopher was funded at Chelsea only by mistake both implausible and irrelevant. The continuance agreed to by both parties on January 13, 1989, was designed, as both sides were well aware, to moot this case except with respect to attorneys' fees. Defendants' present position that plaintiffs must reimburse DCPS for tuition at Chelsea is patently inconsistent with the parties' prior agreement. At the status hearings on January 13 and June 1, 1989, defendants did raise the issue of erroneous funding. Curiously, however, DCPS never pursued repayment until eight days after plaintiffs moved for attorneys' fees and costs. Defendants now wish to use that pursuit as evidence that plaintiffs have not prevailed. But in our opinion, defendants simply are attempting to sandbag an award of attorneys' fees by throwing out a red herring.

Even if defendants genuinely and in good faith believed they were entitled to reimbursement, their claim for repayment is completely without merit. The EHA's "stay put" provision provides that, during the pendency of an action such as this one, "unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child. . . ." 20 U.S.C. § 1415(e)(3). At the second due process hearing, the Hearing Officer required DCPS to place Christopher at Chelsea "until an ultimate decision of appropriateness could be resolved." Admin. Rec., Hearing Officer's Determination of Oct. 28, 1987, at 3. Thus, on December 18, 1987, when plaintiffs appealed the Hearing Officer's subsequent determination that Buchanan was an appropriate placement, Chelsea was Christopher's "current educational placement." 20 U.S.C. § 1415(e)(3); *see Saleh v. District of Columbia*, 660 F. Supp. 212, 214-15 (D.D.C. 1987) (interim placement is "current educational placement"). Consequently, DCPS was required to and did maintain Christopher at Chelsea "[d]uring the pendency of" this action. 20 U.S.C. § 1415(e)(3); *see Saleh*, 660 F. Supp. at 214; *Jacobsen v. District of Columbia Board of Education*, 564 F. Supp. 166, 169 (D.D.C. 1983). *See generally Burlington School Committee v. Massachusetts Department of Education*, 471 U.S. 359, 365-74, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985) (discussing, *inter alia*, section 1415(e)(3)). Defendants' attempt to recoup the monies it paid to Chelsea during this period therefore flies in the face of the Act's "stay put" provision and cannot defeat plaintiffs' motion for attorneys' fees and costs.

© 2002 LRP Publications; all rights reserved    Page: 3

## B. The Appropriate Award

This Court will exercise its discretion to award attorneys' fees to plaintiffs. *See* 20 U.S.C. § 1415(e)(4)(B). Since plaintiffs have "obtained excellent results," their attorneys "should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. at 435. What remains to be decided is what fee is "reasonable." This determination requires that we multiply "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Id.* at 433.

Fees awarded under section 1415(e)(4)(B) must "be based on rates prevailing in [this] community" for "the kind and quality of services furnished." 20 U.S.C. § 1415(e)(4)(C). At different stages of this litigation, plaintiffs were represented by Michael Eig, Matthew B. Bogin, Beth Goodman, and Bradford P. Johnson. All of these attorneys specialize in representing handicapped children and their families under the EHA. Each has practiced in this field for, respectively, fourteen, nine, five, and five years. We find the prevailing rates in the D.C. area for "the kind and quality of [their] services" to be $125.00 per hour for partners and $75.00 per hour for associates. *See Hirsch v. McKenzie*, Memorandum, C.A. 85-3199 (June 21, 1988) (Green, June, J.); *Moore*, 674 F. Supp. at 903 & n.2; Declaration of Beth Goodman at 3. However, the firm of Goodman & Johnson, counsel for plaintiffs in the action before this Court, requests only $115.00 per hour for partner time. Accordingly, for Goodman & Johnson, that is the applicable rate, whereas for Bogin & Eig, plaintiffs' counsel during the administrative proceedings, the applicable rates are $125.00 for partners and $75.00 for associates.

Our next inquiry is whether the documented hours expended on this case are reasonable. We hold that they are. Representation began in July 1987. From that time until the filing of this motion, plaintiffs' attorneys have taken this case through two administrative hearings, totaling four days, and the protracted proceeding in this Court. We find the documentation of hours expended to be adequately detailed, and find no evidence that any time was billed inappropriately or for an unnecessary reason. In light of these factors, we conclude that the 121 hours for which plaintiffs seek fees are not excessive. Accordingly, defendants must pay attorneys' fees based on the rates described above multiplied by the 121 hours billed, plus related costs.

## III. Conclusion

Based on the foregoing, we hold that:

1) plaintiffs are "prevailing parties" within the meaning of 20 U.S.C. § 1415(e)(4)(B);

2) plaintiffs are entitled to an award of attorneys' fees and costs under 20 U.S.C. § 1415(e)(4)(B);

3) the applicable hourly rates for computing this award are $125.00 for partners and $75.00 for associates at Bogin & Eig, and $115.00 for partners and $35.00 for law clerks at Goodman & Johnson;

4) the hours expended by plaintiffs' counsel on this case are adequately documented and were appropriately billed, and related costs are reasonable; and

5) accordingly, defendants must pay plaintiffs' $11,137.76 in attorneys' fees and related costs, $6,591.30 of which relates to services rendered by Goodman & Johnson, and $4,546.46 of which relates to services rendered by Bogin & Eig.

An Order consistent with the foregoing has been entered this day.

## ORDER

Upon consideration of plaintiffs' motion for attorneys' fees and costs, the opposition thereto, and the entire record therein, and for the reasons stated in an accompanying Memorandum Opinion entered this day, it is this 17th day of January, 1990,

ORDERED that plaintiffs' motion is granted; it is

ORDERED that defendants shall, within 30 days of the date of this Order, pay to plaintiffs $11,137.76

© 2002 LRP Publications; all rights reserved    Page: 4

in attorneys' fees and related costs; and it is

FURTHER ORDERED that this case is dismissed with prejudice.

The Hearing Officer had ordered Christopher's placement at Buchanan to begin in January 1988.

Although Bogin & Eig, counsel for plaintiffs in the administrative proceedings, requests hourly rates of $140.00 for partner time and $85.00 for associate time, Declaration of Matthew B. Bogin at 3, there is insufficient evidence to support a finding that those rates are "prevailing." According to Goodman & Johnson, $140.00 is the *maximum* rate currently charged in the community for partner time. Declaration of Beth Goodman at 3. In recent EHA cases in which attorneys' fees were awarded, the hourly rate for partners has not exceeded $125.00. *See, Hirsch v. McKenzie*, Memorandum, C.A. 85-3199 (June 21, 1988) (Green, June, J.); *Moore*, 674 F. Supp. at 903 & n.2.

Goodman & Johnson also request a rate of $35.00 per hour for law clerks. Defendants generally object to this rate, in addition to the others proposed by plaintiffs, but offer no evidence that this rate is not the "prevailing" one. Based on our knowledge of billing rates in the community and the lack of any serious objection on the part of defendants, we conclude that this rate is reasonable.

Plaintiffs' computer print-outs of time charges consist of four entries: the amount of time spent; a short description of how the time was spent; the date the time was spent, and an identification of the attorney who expended the time.

For the reasons stated in the factually similar *Moore* case, we reject defendants' bald and unsubstantiated attacks on the efficiency and integrity of plaintiffs' counsel. *See Moore*, 674 F. Supp. at 905.

© 2002 LRP Publications; all rights reserved    Page: 5

**B**

George **ROHER**, et al.,
               Defendants

No. 89-3258

U.S. Court of Appeals, District of Columbia Circuit

February 7, 1997

- Attorneys' Fees/Generally, Prevailing Party
- Attorneys' Fees/IDEA, Prevailing Party
- Procedural Safeguards, Attorneys' Fees
- Attorneys' Fees/Generally, Calculation of Award
- Attorneys' Fees/IDEA, Calculation of Award

## Summary

Several students with disabilities were enrolled in a private school until the district proposed a placement change. The students' parents contested the placement change at due process. An administrative hearing officer ordered the district to restore funding for all students at the private school. The district appealed to court. After five years of litigation, the case was ultimately dismissed as moot. Although the court did not enter a judgment on the merits, the district did not obtain the relief sought and the parents succeeded in preserving the favorable administrative decision below. Thereafter, the parents sought attorneys' fees.

*HELD:* the parents substantially prevailed.

There was no dispute that the parents were entitled to attorneys' fees for the administrative level of the case, and only the entitlement to fees for the civil litigation phase was in dispute. The district court rejected the district's argument that the parents' posture before the court as defending the administrative decision below rather than taking an offensive approach barred the claim for attorneys' fees, finding that factor to be irrelevant. Nor was a judgment on the merits of a case a prerequisite for attorneys' fees. Since the parents succeeded in preserving their victory and obtained their objective of a motion to dismiss and thus, were prevailing parties under the IDEA.

As to the calculation of the fee award, the court accepted parents' argument that fees should be based on current hourly rates, rather than the attorneys' historic hourly rate plus interest to compensate for delay. The court noted that current hourly rates had been used in the circuit to calculate attorneys' fees, and the use of current rates was appropriate given the delay in payment of fees since litigation was begun back in 1989, several years before. The use of current hourly rates helped "ease" the administrative burden of calculating fees in the action where the attorneys' hourly rates and interest rates had changed several times during the course of the litigation. Nor would the use of current rates result in an "undue windfall" to parents. The court found that the lawyers' current billing rates were reasonably consistent with the prevailing market rate and that the hours claimed were reasonably expended with a few exceptions for which it made adjustments. The court found that it was inappropriate to bill at the partner and associate rates for the duties of filing pleadings, file review for proof of service, and effectuating service, and the court replaced those fees with rates charged by paralegals and other support staff. Adjustments were made for time billed when leaving a

© 1997 LRP Publications; all rights reserved    Page: 1

telephone message which was deemed excessive and the court refused to allow compensation for requested extensions. Fees charged for reviewing a file were stricken, lacking an adequate basis of support. While the court found that certain matters may be so complicated so as to justify billing for two partners at court hearings, the court found it was unreasonable for the firm to use two partners for a motion to dismiss and substituted an associate's rate for one of those individuals. The court made some adjustments for duplicate billing for work which was performed which was applicable to more than one of the client students, as this effort involved the same task. While the court granted the request for attorneys' fees for reply to the district's opposition to the fee request as reasonable, it denied fees for supplemental filings which were necessary only because the parents' initial applications were deficient. The court awarded attorneys' fees in the total amount of $82,663.44.

---

Counsel for Parents: Michael Jeffrey Eig, Matthew Barry Bogin, Bogin & Eig, P.C., Washington, D.C., Margaret A. Kohn, Kohn & Einstein, Washington, D.C., Holly Cohen Cooper, Silver Spring, MD.

Counsel for District and Superintendent: Andrew E. Jenkins, III, Superintendent, D.C. Public Schools (Officially): Susan Eleanore Sutler, D.C. Public Schools, Logan Assessment Center, Washington, D.C., Pastell Vann, Thomas L. Koger, Meena Sudhakara, Office of Corporation Counsel, D.C., Washington, D.C.

**JOYCE HENS GREEN**, United States District Judge

## Memorandum Opinion and Order

Presently pending is the defendants' Motion for Attorneys' Fees and Costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(e)(4)(B) (1994). Upon consideration of the defendants' motion, the opposition thereto, the supplemental pleadings filed in accordance with this Court's Order of May 6, 1996, and the entire record herein, the defendants' motion will be granted.1 The plaintiff shall be ordered to pay the defendants $82,663.44.

## I. Background

Congress enacted the IDEA to ensure that children with disabilities are provided with "free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c). Under the IDEA, a disabled child is provided with an individualized education program ("IEP"), which is based upon his or her particular needs and developed through the joint participation of the local education agency, the teacher and the parents. Id. §§ 1412(4), 1414(a)(5). The IDEA also establishes procedures for challenging decisions related to disabled children that include administrative hearings and litigation in state or federal court. Id. § 1415(e)(2).

The defendants seek attorneys' fees and costs for administrative and civil litigation based on the "stay put" provisions of the IDEA, which provide that "unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then-current educational placement of such child." Id. § 1415(e). The defendants were enrolled at the Lab School of Washington during the 1988-89 school year. However, in June of 1989, the plaintiff Superintendent of School for the District of Columbia attempted to change each defendant student's placement. The defendants petitioned for a hearing at which they successfully opposed the changes. On November 2, 1989, an administrative hearing officer ordered the plaintiff to restore funding for each defendant at the Lab School.

The plaintiff Superintendent of Schools sought review of the administrative hearing officer's decision, filing suit in this Court on December 4, 1989. The case was litigated over a period of almost five years, but ultimately was dismissed as moot on November 1, 1994. Although judgment was not entered on the merits,

© 1997 LRP Publications; all rights reserved     Page: 2

the plaintiff was denied the relief sought and the defendants successfully preserved the administrative hearing officer's decision below.

Defendants in the civil litigation (who were the petitioners in the administrative hearing below) seek attorneys' fees and costs. Finding the defendants' initial fee petition to be inadequate, the Court ordered the defendants to provide additional information regarding the rates charged, currently and historically, the prevailing market rates, and data regarding the experience of the attorneys who provided the services in this case. See Order of May 6, 1996. The Court also provided the plaintiff with an opportunity to respond and to identify with precision the fee amounts, if any, to which it objected.

The defendants' request is broken down as follows:

| | |
|---|---|
| Roher | $9,647.89 |
| Jarman | $3,883.77 |
| Bobier/Daveler | $5,044.70 |
| Mark | $8,045.92 |
| *Jenkins v. Roher* | $60,261.16 |
| Fee reply | $900. |
| Supplemental mem. | $1,900. |
| Supplemental reply | $1,080. |
| Total | $90,763.44 |

## II. Discussion

The IDEA provides, in relevant part, that "in any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as a part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). An action or proceeding under the IDEA includes both civil litigation in federal court and administrative litigation before hearing officers. *Moore v. District of Columbia*, 285 U.S. App. D.C. 95, 907 F.2d 165, 176 (D.C. Cir.), *cert. denied*, 498 U.S. 998, 111 S.Ct. 556 (1990). The plain language of the statute limits an award of fees to parents and guardians who prevail. Resolving attorneys' fees matters involves determining first whether the parents (or guardians) are entitled to fees as prevailing parties and, if so, determining the appropriate amount of an award.

In this case, the defendants seek over $90,000 in fees and costs for both the administrative hearing and the subsequent civil litigation, contending that they are prevailing parties under the IDEA. The plaintiff opposes, arguing that the defendants did not prevail at the judicial level, because the Court's dismissal was not an adjudication on the merits. Moreover, according to the plaintiff, only parents and guardians who are prevailing plaintiffs, not prevailing defendants, are entitled to attorneys' fees. Additionally, the plaintiff disputes the reasonableness of the fee request.

### A. Prevailing parties

The plaintiff does not, nor could it, object to the defendants' entitlement to fees as the prevailing party at the administrative level. *Moore*, 907 F.2d at 176. Instead, the plaintiff's argument is based on the parents'

© 1997 LRP Publications; all rights reserved    Page: 3



status as defendants in the judicial litigation and on the fact that the dismissal was based on mootness. Neither argument is persuasive.

To be eligible for attorneys' fees under the IDEA, the parent or guardian must fall within the definition of prevailing party. See *Texas State Teachers Ass'n v. Garland Ind. School District*, 489 U.S. 782, 789, 109 S.Ct. 1486 (1989); see also *Farrar v. Hobby*, 506 U.S. 103, 109-10, 113 S.Ct. 566 (1992).2 A party prevails when it obtains a direct benefit that materially alters the legal relationship between the parties. *Farrar*, 506 U.S. at 111; *Garland*, 489 U.S. at 792. The critical factor is the degree of success obtained, *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933 (1983), and the "logical place to look for recovery of fees is to the losing party." *Kentucky v. Graham*, 473 U.S. 159, 164, 105 S.Ct. 3099 (1985).

At the administrative stage, the defendants sought an administrative hearing and prevailed on their objective to restore funding at the Lab School. The plaintiff then sought to have the hearing officer's decision overturned in federal court, as it has a right to do. The defendants' objective at the judicial level shifted from one of offense to one of defense. Before this Court, they simply desired to preserve the decision below. Ultimately, they succeeded, obtaining a dismissal of the complaint after lengthy proceedings. In both the administrative and judicial fora, the defendants attained their objectives. Overall, the relationship between the parties was materially altered, and there is no denying that the defendants benefitted directly from both the hearing officer's decision of November 2, 1989, and this Court's dismissal of November 1, 1994.

The plaintiff's argument to deny the prevailing defendants fee is inconsistent with the plain text of the statute and its underlying purpose as well as the case law construing the meaning of "prevailing party." Contrary to the plaintiff's view, the statute does not limit fee awards to prevailing plaintiffs, but to prevailing parties. While the defendant parents were placed in a defensive posture because the plaintiff Superintendent of Schools sought review of the hearing officer's decision, the offensive or defensive nature of the parents' position is irrelevant. See, e.g., *Rapid City School District v. Vahle*, 733 F.Supp. 1364, 1370 (D.S.D.) ("That the defendants are prevailing parties is without doubt.") (emphasis omitted), aff'd, 922 F.2d 476, 478 (8th Cir. 1990). Similarly, the defendant parents here attained their objective in this litigation: through their motion to dismiss, they preserved the status quo and thereby succeeded on a significant issue. See *Hacienda La Puente Sch. Dist. v. Honig*, 976 F.2d 487, 496 (9th Cir. 1992) (parent appellees entitled to fees under the IDEA when they succeeded in opposing school district's appeal of district court's decision and thereby preserved status quo).

Entitlement to an award of attorneys' fees under the IDEA is not limited to those proceedings in which the parents obtain a judgment on the merits. See, e.g., *Borengasser v. Arkansas State Bd. of Educ.*, 996 F.2d 196, 199 (8th Cir. 1993) (parents entitled to attorneys' fees under IDEA where they obtained motion to enforce agreement); *Wheeler by Wheeler v. Towanda Area School Dist.*, 950 F.2d 128, 132 (3rd Cir. 1991) (parents entitled to attorneys' fees even though litigation did not result in favorable judgment because pressure created by the lawsuit was a material factor in obtaining desired relief); *E.M. v. Millville Bd. of Educ*, 849 F.Supp. 312, 316-17 (D.N.J. 1994) (although parents did not obtain a favorable judgment, they were entitled to attorneys' fees under IDEA because they prevailed on the significant issue of the case); *Capiello v. District of Columbia*, 779 F.Supp. 1, 2 (D.D.C. 1991) (parents entitled to fees where they obtained temporary restraining order to compel compliance with administrative hearing officer's decision). Fees should normally be awarded under the IDEA unless special circumstances make such an award unjust. *Borengasser*, 996 F.2d at 199; *Abu-Sahyun v. Palo Alto Unified School Dist.*, 843 F.2d 1250, 1252 (9th Cir. 1988).

The parents here succeeded in their quest to defend before this Court and preserve their victory at the administrative level. Simply put, they obtained their ultimate objective through the granting of their motion to dismiss in this litigation. They achieved a direct benefit and the overall legal relationship between the parties was materially altered. There is nothing about this case that would make an award of attorneys' fees to the parents unjust. The parent defendants are therefore entitled to reasonable attorneys' fees as prevailing parties under the IDEA, 20 U.S.C. § 1415(e)(4)(B).

© 1997 LRP Publications; all rights reserved    Page: 4



## B. Reasonable fees

An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case. *Hensley*, 461 U.S. at 433. This calculation produces the "lodestar," which may be adjusted depending on the results of the litigation. *Blum v. Stenson*, 465 U.S. 886, 903, 104 S.Ct. 1541 (1984). The prevailing party bears the burden to justify the reasonableness of the fees sought. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorneys' own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to--for convenience--as the prevailing market rate." *Blum*, 465 U.S. at 895 n.11; see also *Missouri v. Jenkins*, 491 U.S. 274, 286, 109 S.Ct. 2463 (1989); *Covington v. District of Columbia*, 313 U.S. App. D.C. 16, 57 F.3d 1101, 1108-09 (D.C. Cir. 1995), *cert. denied*, 116 S.Ct. 916 (1996).

## The hourly rate

The defendants seek an award at current rates to compensate for the delay in the payment of fees. The plaintiff filed the suit in 1989, and the defendants did not prevail until 1994. The plaintiff opposes an award at the current hourly rates and argues that the appropriate award is at counsel's historic hourly rate plus interest to compensate for the delay.

As the Supreme Court has noted, "clearly, compensation received several years after the services were rendered--as it frequently is in complex civil rights litigation--is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Jenkins*, 491 U.S. at 283. In *Jenkins*, the Court sanctioned an adjustment for delay, and our Circuit has approved the use of current hourly rates to calculate attorneys' fees awards. See, e.g., *King v. Palmer*, 285 U.S. App. D.C. 68, 906 F.2d 762, 769 (D.C. Cir. 1990), *vacated on other grounds*, 950 F.2d 771 (D.C. Cir. 1991) (en banc), *cert. denied sub nom.*, *King v. Ridley*, 505 U.S. 1229, 112 S.Ct. 3054 (1992); *Murray v. Weinberger*, 239 U.S. App. D.C. 264, 741 F.2d 1423, 1433 (D.C. Cir. 1984). While the Court has the discretion to award fees at the current rate, she is nevertheless obligated to ensure that the rate awarded is consistent with the market, that it is the appropriate way to compensate for the delay, and that it does not result in a "windfall" to the prevailing party. See *Jenkins*, 491 U.S. at 283-84; *Murray*, 741 F.2d at 1433.

In the instant case, the use of current rates is appropriate. First, the complaint was filed by the plaintiff Superintendent of Schools, placing the parents (who prevailed at the administrative hearing) in a defensive posture in 1989. The bulk of the legal expenses were incurred in 1989, 1990 and 1991--five to seven years before the prevailing defendants filed their fee request. This lengthy time period is more than sufficient to justify the use of current rates to compensate for the delay. See *King*, 906 F.2d at 769; *Murray*, 741 F.2d at 1433. Second, the use of current rates eases the administrative burden of calculating the proper award. See *Murray*, 741 F.2d at 1433. Over the pendency of this action, counsel's hourly rate has changed a number of times as have the prevailing rates of interest. The use of current hourly rates acts as a surrogate for interest, see *King*, 906 F.2d at 769, and, in this case, an award based on current rates would ease the administrative burden of calculating the appropriate award. Finally, upon consideration of a comparison of the amounts sought based on current rates in light of what might be awarded based on historical rates, it is clear that the use of current rates would not result in a windfall.3

The usual billing rate is presumptively reasonable provided that it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Kattan v. District of Columbia*, 301 U.S. App. D.C. 374, 995 F.2d 274, 278 (D.C. Cir. 1993), *cert. denied*, 114 S.Ct. 1398 (1994). Here, the defendants have sufficiently demonstrated that their current billing rates are reasonable and consistent with the prevailing market rate.4 See *Bailey v. District of Columbia*, 839 F.Supp. 888, 890-91 (D.D.C. 1993). The fee award will be based on the following rates:

© 1997 LRP Publications; all rights reserved    Page: 5

| | |
|---|---|
| Mathew Bogin and Michael Eig | $250/hour |
| Associates | $180/hour |
| Consultants | $110/hour |
| Paralegals and support staff | $85/hour |

### Hours reasonably expended

The Court must exclude from the fee award any hours that were not "reasonably expended." *Hensley,* 461 U.S. at 434. The prevailing party shoulders the burden to provide the Court with sufficient evidence to justify its request, see *In re North,* 303 U.S. App. D.C. 443, 8 F.3d 847, 852 (D.C. Cir. 1993), and the Court has considerable discretion in evaluating its reasonableness. *Kattan,* 995 F.2d at 278. The Court must reduce a fee award if the time spent is excessive. 20 U.S.C. § 1415(e)(4)(F)(iii). Upon consideration of the defendants' request and the plaintiff's objections thereto, the Court has determined that the request is reasonable with the following exceptions:

### 1. *Jenkins v. Roher*--(defendants request $60,261.16)

a. Filing pleadings. The plaintiffs object to the defendants' use of attorneys to file pleadings. In four instances, the defendants used an associate and charged at the associate rate for filing pleadings with the Clerk of Court. See Billing Record of Lopez (billing $144 for filing on Dec. 11, 1991 and $72 on Jan. 13, 1992); Billing Record of Kohn (billing $54 on Jan. 22, 1992 and $36 on Apr. 4, 1990). Once, the defendants even billed at the partner rate for filing. See Billing Record of Bogin (billing $225 on Sept. 6, 1990).5 Additionally, the defendants used an associate to effectuate service. See Billing Record of Kohn (billing $36 on Apr. 4, 1990). While the defendants may use their attorney resources however they see fit, it is excessive to bill for these services at other than a paralegal rate. Accordingly, the Court will replace the amounts charged at the associate and partner rates with amounts charged at the paralegal/support staff rate. This results in a net reduction of $329.6

b. Telephone call. Attorney Cooper billed twelve minutes and $36 merely to "place call to opposing counsel--left message re: motion for enlargement." Billing Record of Cooper (Nov. 4, 1990) (emphasis omitted). The defendants do not explain why it took twelve minutes to leave a message. Because $36 is clearly excessive, this charge will be reduced by $30 to $6 (representing two minutes--a reasonable time to leave a message).

c. Various motions for enlargements. The plaintiff objects to paying for the defendants to prepare and file various motions for enlargements. In response, the defendants state that "such motions are part of the practice of law." Defendants' Reply, at 5 (filed June 11, 1996). While a motion for an enlargement may in fact be part of the practice of law, absent some reasonable justification for a given motion (and none has been provided by the defendants), it is not reasonable to require the plaintiff to foot the bill for the defendants' requested extensions. The costs related to motions for enlargements will be deducted, resulting in a net reduction of $270.7

d. Attorney Lopez's file review. The plaintiff objects to Attorney Lopez billing $720 to review a file on Nov. 11, 1991 when "the next entry for services rendered is not until a month later." Plaintiff's Response to Defendants' Supplemental Memorandum, at 9-10 (filed June 3, 1996). The plaintiff asks: "Toward what end did Mr. Lopez review a file on 11/11/91?" Id. at 10. The Court is left with the same question, and the defendants have failed to provide an adequate response in their reply (or elsewhere).8 The billing for $720 will be stricken.

e. The Motion to Dismiss. The plaintiff objects to excessive billing in connection with a motion to dismiss and a reply filed in the Spring of 1990. Attorney Bogin billed at the partner rate of $250 for

approximately 11 hours between February 2, 1990 and March 28, 1990 to prepare and file a motion to dismiss and a reply. Attorney Eig billed at the partner rate for approximately 5.5 hours between February 20, 1990 and February 28, 1990, in connection with the same motion. To justify such billing the defendants contend that they have met their burden simply by submitting the bills and declarations. However, billing two partners for over sixteen hours (at $250/hour) for this purpose is excessive, and the defendants have not adequately justified why the efforts of two partners (at the highest rate) were required or justified. It is nevertheless reasonable for a partner to work with an associate. Accordingly, the associate rate will be substituted for the rate charged by Attorney Eig. The total will be reduced by $385, the difference between the rate charged by Attorney Eig and that chargeable based upon the associate rate.

f. Court appearances. The plaintiff objects to paying for two partners to appear at the hearings on January 16, 1990 and January 29, 1990. In reply, the defendants merely state that they "staff appropriately and object to plaintiff's repeated unfounded attempts to second-guess their use of resources." Defendants' Reply, at 7. This response is inadequate to justify billing for two partners at the $250/hour rate. While certain matters may be so complicated that the presence/participation of two partners at a hearing is justified, the defendants have not so contended here. Since the defendants have not adequately justified this billing, Attorney Eig's billing of $1,000 (for four hours on Jan. 16, 1990) and Attorney Bogin's billing of $725 (for approximately three hours on January 29, 1990) will be stricken.9

Accordingly, the amount awarded will be reduced by a total of $3,459, resulting in an award of $56,802.16.

### 2. Roher--(defendants seek $9,647.89)

The plaintiff objects to a letter to "LSW re determination," which Attorney Eig billed twice for $125 on Nov. 30, 1989. The defendants concede that this double billing was in error.

Since the balance of the request appears to be reasonable, $9,522.89 will be awarded.

### 3. Jarman--(defendants seek $3,883.77)

a. Duplicate billing. The plaintiff objects to paying fees associated with five entries that are identical (down to the typographical errors) to those billed in Roher (and two other cases) for correspondence and a telephone conference between September 21, 1989 and October 4, 1989. The defendants respond that the "letters were drafted regarding four separate clients and billed appropriately." Defendants' Reply, at 7. The Court accepts the defendants' representation that four letters were drafted and sent for each client, but she cannot accept that the billing approach is reasonable. While the billing would be justified for one client, it is excessive in relation to the nature of these cases to charge each of four clients for time spent on virtually the same task. The Court has rejected this billing practice before, see *Bridgeforth v. District of Columbia*, 933 F.Supp. 7 (D.D.C. 1996), and she will reject it here. While some additional costs may reasonably be incurred under this approach, the full amount charged is unjustified. The five entries will be reduced by a factor of eighty (80) percent and the award for Jarman will therefore be reduced by $280.

Accordingly, the amount awarded will be reduced by a total of $280, making the award $3,603.77.

### 4. Bobier Daveler--(defendants seek $5,044.70)

a. Duplicate billing. This billing suffers from similar defects as in Jarman; the correspondence to Robert Burch on September 21 and 28, 1989 ($75 each) is duplicative with Roher; therefore, $120 will be stricken. Additionally, the "correspondence to opposing counsel involving stay put provision after review of file" on October 19, 1989 is generally duplicative of that billed in Jarman, and it will be reduced by $240 (or eighty (80) percent of the $300 billed).

b. Double entry. The plaintiff objects to paying twice for preparation of the final draft of a motion for a temporary restraining order on September 14, 1989. The defendant concedes that this double billing was an error. The award will be reduced by $550.

Accordingly, the amount awarded will be reduced by a total of $910, making the award $4,134.70.

© 1997 LRP Publications; all rights reserved    Page: 7



### 5. Mark--(the defendants seek $8,045.92)

a. Duplicate billing. This billing suffers from the same defects as the billing in Jarman; therefore, $280 will be stricken.

b. File review for proof of service. The defendants have charged at the partner rate for Attorney Eig's work to review a file for a proof of service. This is excessive, and will be reduced to the rate chargeable by a paralegal; the bill will be reduced by $66.

Accordingly, the amount awarded will be reduced by a total of $346, making the award $7,699.92.

### 6. Attorneys' fees for reply and supplemental filings

The request for $900 in fees and costs associated with the defendants' reply to the plaintiff's opposition to the fee request is reasonable, and it will be granted. However, the fees and costs sought for filing the supplemental filings will be denied. The supplemental filings were necessary only because the defendants' initial application was deficient. It is unreasonable for the plaintiff to be forced to shoulder the economic burden for the defendants' errors.

### C. The award

| Case/client | Requested | Adjusted | Awarded |
|---|---|---|---|
| Roher | $9,647.89 | ($125.) | $9,522.89 |
| Jarman | $3,883.77 | ($280.) | $3,603.77 |
| Bobier/Daveler | $5,044.70 | ($910.) | $4,134.70 |
| Mark | $8,045.92 | ($346.) | $7,699.92 |
| *Jenkins v. Roher* | $60,261.16 | ($3,459.) | $56,802.16 |
| Fee reply | $900. | 0 | $900. |
| Supplemental mem. | $1,900. | ($1,900) | 0 |
| Supplemental reply | $1,080. | ($1,080) | 0 |
| Total | $90,763.44 | ($8,100.00) | $82,663.44 |

### III. Conclusion

Accordingly, it is hereby

ORDERED that the defendants' fee application is granted; the defendants shall be, and hereby are, awarded fees and costs in the amount of $82,663.44. Judgment shall be entered this date by a separate Judgment Order in accordance with Fed.R.Civ.P. 58; and it is

FURTHER ORDERED that the defendants' request for a motions hearing is denied.

IT IS SO ORDERED.

[1] The defendants have also requested a hearing. Whether to hold a hearing is a matter within the discretion of the Court. See Local Rule 108(f). Because a hearing is unnecessary to rule on the pending fees petition and because it would serve to drive the costs of this litigation even higher, the motion will be denied.

© 1997 LRP Publications; all rights reserved     Page: 8

² In construing the IDEA, Congress intended for the courts to rely upon interpretations of the term "prevailing party" in the attorneys' fee-shifting provisions of 42 U.S.C. § 1988 (1994). See H.R. Rep. No. 296, 99th Cong., 1st Sess. 5 (Oct. 2, 1985); S. Rep. No. 112, 99th Cong., 1st Sess. 13 (July 16, 1985); *Beard v. Teska,* 31 F.3d 942, 950 & n.8 (citing cases).

³ Since the Court will base the award on current rates, no enhancement for delay will be added to the lodestar. See *Murray,* 741 F.2d at 1433.

⁴ See Supplemental Memorandum in Support of Defendants' Motion for Attorneys' Fees and Costs, at 1 (May 20, 1996) (filed in response to the Court's Order of May 6, 1996).

⁵ The defendants suggest that counsel filed these motions when they were at the Courthouse for other purposes. See Defendants' Reply, at 6. While the billing records provided to the Court do not indicate that counsel were at the Courthouse on the days at issue for matters related to this case, the Court does not dispute the defendants' representation. Nevertheless, regardless of the purpose for counsels' sorties to the Courthouse, it is inappropriate to bill at associate or partner rates for tasks at the paralegal/support staff level.

⁶ For filing, the defendants billed 1 hour 54 minutes at the associate rate, totaling $342; at the paralegal/support staff rate, the total is $161.50. The defendants billed 54 minutes at the partner rate, totaling $225; at the paralegal/support staff rate, the amount is $76.50.

⁷ This amount is comprised of $180 billed by Attorney Lopez (1 hour on Dec. 20, 1991) and $90 billed by Attorney Cooper, which includes a telephone call to obtain the plaintiff's consent (54 minutes on Nov. 2, 1994, and 12 minutes on Nov. 8, 1994).

⁸ The defendants did not expressly address this issue. To the extent a response can be found, it appears to be that they would contend that the plaintiff's objections constitute "nitpicking" and an "impermissible effort[ ] to second-guess the defendants' legal strategy," Defendants' Reply, at 7, or a challenge to matters that constitute the routine practice of law. See id. passim. The defendants apparently have not recognized that they carry the burden to justify the fees they seek. Where, as here, the source of the money is the public fisc, the Court scrutinizes the billing records very closely.

⁹ The Court will allow the defendants to charge for Attorney Eig's billing of $1,000 (for four hours on Jan. 29, 1990) and for Attorney Bogin's billing of $1,175 (for 4:42 hours on Jan. 16, 1990).

© 1997 LRP Publications; all rights reserved    Page: 9